

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:21-cr-65 |
| | ) | |
| v. | ) | **INDICTMENT** |
| | ) | T. 18 U.S.C. § 2 |
| VEMUNA KATJAIMO, and | ) | T. 18 U.S.C. § 1343 |
| EMMANUEL AZUBUIKE OGBEIDE, | ) | T. 18 U.S.C. § 1349 |
| | ) | T. 18 U.S.C. § 1956(a)(1)(B)(i) |
| Defendants. | ) | T. 18 U.S.C. § 1956(h) |
| | ) | T. 18 U.S.C. § 1957 |
| | ) | T. 18 U.S.C. § 981 |
| | ) | T. 18 U.S.C. § 982(a)(1) |
| | ) | T. 21 U.S.C. § 853 |
| | ) | T. 28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### BUSINESS EMAIL COMPROMISE

1. On or about May 2019 through July 2019, Victim Company #1, located in Muscatine, Iowa, within the Southern District of Iowa, fell victim to a Business Email Compromise scam, herein after referred to as a "BEC."

2. In BEC scams, the scammers target businesses and individuals making wire transfer payments. The scammers often target employees with access to company finances and trick those employees via email into making wire transfers to a bank account that scammers falsely represent as belonging to one of the company's trusted venders or partners—when in fact that account is controlled by the scammers and their associates. Additionally, BEC scammers sometimes use sophisticated

computer intrusion techniques to alter legitimate payment-request emails, change the recipient bank account to an account controlled by the fraudsters or obtain company information related to outstanding invoices and venders.

3.   One of the common methods BEC schemes employ is the use of "spoofed" email accounts. Spoofed email accounts are accounts that imitate the corporate email accounts of an employee of a vender of a victim company. These fake e-mail accounts are specifically designed to trick employees of the company with access to the company's finances to think the fake email accounts are authentic. Fraudsters use those imitation accounts to direct employees, customers, or partners of a victim company to send money to a bank account controlled by the fraudster or a co-conspirator. Fraudsters often direct an employee, customer, or partner to wire funds under the disguise of legitimate business transactions, as in a payment to a vender.

4.   The fraudulent emails or computer intrusions described above are sent via interstate wires and the money sent in response to the BEC scam is sent to bank accounts via interstate wires. Therefore, these scams can be a violation of the Wire Fraud statute, Title 18, United States Code, Section 1343 and two or more individuals who agree to participate in these scams may violate the Fraud Conspiracy statute, Title 18, United States Code, Section 1349.

5.   Between in or about May 2019 and July 2019, an unknown individual sent via the Internet an email to Victim Company #1 that falsely, fraudulently, and materially represented that it was from one of Victim Company #1's trusted venders.

That email falsely, fraudulently, and materially requested that Victim Company #1 change the routing and account number for the bank in Victim Company #1's system for all future payments. Based on those materially false and fraudulent representations, Victim Company #1, sent two interstate wire money transfers to an account they thought was controlled by one of their venders located in San Antonio, Texas, for payment of services. As a result, Victim Company #1 sent approximately $265,151.46, via interstate wire, to a fraudster, instead of the intended vender company recipient.

## MONEY LAUNDERING CONSPIRACY

6. In order to collect the fraudulent proceeds, BEC fraudsters need bank accounts controlled by co-conspirators to collect the stolen money. Therefore, prior to the scam, a co-conspirator would open a bank account under the name of a non-existent business in order to conceal and disguise the nature, location, sources, ownership, and control of the proceeds of the fraud.

7. Further, after a BEC scam was successful and the money was deposited into the co-conspirator's account, bank account records show that the co-conspirator acted quickly to remove any fraudulent funds deposited into the accounts (s)he controlled. The quick withdrawal of funds was also designed to conceal and disguise the nature, location, sources, ownership, and control of the proceeds of the fraud.

8. Victim Company #1 sent approximately $265,151.46 to a bank account controlled by members of the conspiracy.

9. Bank accounts owned and controlled by the Defendants and their co-conspirators received a significant amount of funds derived from victims of multiple other BEC scams.

10. Based on a) transfer of funds between the co-conspirators; b) communication between the conspirators; and c) the common source of the money (BEC scam), VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE agreed to launder funds from the same fraud conspiracy.

## ROLES

11. Victim Company #1 is a global company with its headquarters located in Muscatine, Iowa, which is within the Southern District of Iowa. It is common practice for Victim Company #1 to pay its venders via direct ACH[1] payments to the vender's known bank account. These ACH payments are accomplished using interstate wires in the following manner:

A. Victim Company #1 uses an accounting software designed for engineering companies. Vender records are added using the accounting software. An ACH is first initiated using this software. There is a manual upload of the ACH file to Victim Company #1's bank, Wells Fargo Bank. This is all done from Victim Company #1's corporate headquarters in Muscatine, Iowa. The computer servers for Victim Company #1 are located in the Muscatine, Iowa

---

[1] An ACH transfer is the electronic movement of money between banks through the Automated Clearing House network. ACH transfers including but not limited to an external funds transfers, person-to-person payments, bill payments, direct deposits from employers and government benefit programs, and business-to-business payments.

4

location. The payment cycle for Victim Company #1 starts in accounts payable, where a vender invoice is entered. The payment run is initiated by the Financial Reporting Department and the ACH file is uploaded to Wells Fargo by a Treasury Department associate using an electronic communication transmitted via interstate commerce. Once received by Wells Fargo Bank, the ACH payments are sent to the Federal Reserve using an electronic communication transmitted via interstate commerce, which then sends the payments to the vender (also using an electronic communication transmitted via interstate commerce).

12. Defendant, VEMUNA KATJAIMO, is a citizen of Namibia, and entered the United States pursuant to a Non-Immigrant B1/B2 Visa that has expired; at all times relevant to this indictment she lived in Richardson, Texas.

13. Defendant, EMMANUEL AZUBUIKE OGBEIDE, is a citizen of Nigeria, and entered the United States on a B1/B2 Visa; at all times relevant to this indictment he lived in Richardson, Texas.

## COUNT 1
### Conspiracy to Commit Wire Fraud

14. Count One incorporates by reference, as if fully set forth herein, paragraphs one through thirteen of this Indictment.

OBJECTS OF THE CONSPIRACY

15. Beginning on unknown dates but no later than June 2018, and continuing through an unknown date, but no earlier than on or about July 31, 2019,

5

in the Southern District of Iowa, and elsewhere, Defendants, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18 United States Code, Section 1343.

16.   Defendants, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, together with others known and unknown to the Grand Jury, voluntarily entered into an agreement to execute and attempt to execute a scheme to defraud victims as to material matters, and to obtain money and property from such victim by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts; and in furtherance of that scheme used interstate wire communications.

MANNER AND MEANS

17.   The fraudulent schemes were conducted, in part, by hacking into the computer system of either the BEC fraud victim, or a party with whom the fraud victim conducted business.  The purpose of the intrusion was to obtain information about the victim company's business relationships, to whom they owed money, and information about outstanding invoices.  In some instances, part of this computer intrusion involved setting up rules on the email accounts of employees for the victim company or their vender so that the fraud would go undetected and allow the conspirator to gain more information.

18. As part of the scheme, one of the conspirators would obtain a spoofed email account by procuring an email domain name that was nearly identical to the domain name used by a vender of the victim company. The person using the spoofed email account would email employees of the victim company and purport to be from a vender to whom the victim company owed money. The conspirator would then convince the victim company to change the bank account and routing information they had on file for the vender so that future payments would be diverted to an account under the control of other co-conspirators. In the case of Victim Company #1, on or about May 21, 2019, a co-conspirator obtained the domain name rkcigroup.com with the intent to trick Victim Company #1's employees into believing that they were corresponding with a known vender, thereby allowing the scheme to be successful.

19. Prior the execution of this fraud, Defendants, KATJAIMO and OGBEIDE, together with other conspirators both known and unknown to the Grand Jury, would open bank accounts in the name of non-existent businesses for the purpose of receiving the diverted funds. The bank account information, including the account number and routing number would then be communicated to the conspirator that was communicating with the victim company so the conspirator would know where to have the victim company wire the money. For example, on or about February 13, 2019, Defendant KATJAIMO, opened or caused to be opened, bank account ending in x3975 with BBVA Compass under the name of Bryant Brothers

7

Construction, a non-existent business, based on materially false or fraudulent statements, representations, and the concealment of material facts.

20. Once these funds were received by Defendants, they would work together and with others both known and unknown to the Grand Jury, to withdraw, transfer, exchange, or otherwise move the funds to different accounts to avoid detection, disguise and conceal the source of the funds, and to prevent the funds from being frozen by the financial institution or law enforcement.

21. On or about the following dates, in the Southern District of Iowa, and elsewhere, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, together with others known and unknown to the Grand Jury, did cause to be transmitted in interstate commerce, by means of email communication via the Internet, that is: email communications to Victim Company 1#'s employees, M.A. and D.M., regarding the payment of outstanding invoices. An example of this activity is as follows:

    A. On or about May 24, 2019, an email communication transmitted in interstate commerce from kbeckman@rkcigroup.com to Victim Company #1's employee, M.A., in Muscatine, Iowa, requesting information about invoices UI18001011 – 1013.

    B. On or about May 24, 2019, an email communication transmitted in interstate commerce via the Internet from kbeckman@rkcigroup.com to

Victim Company #1's employee, M.A., in Muscatine, Iowa, requesting a form to change the banking information for Victim Company #1's vender.

C. On or about May 24, 2019, an email communication transmitted in interstate commerce from kbeckman@rkcigroup.com to Victim Company #1's employee, M.A., in Muscatine, Iowa, requesting information about invoices UI18001011 – 1013.

D. On or about May 29, 2019, an email communication transmitted in interstate commerce from kbeckman@rkcigroup.com to Victim Company #1's employee, M.A., in Muscatine, Iowa, inquiring about the status of the banking update.

E. On or about May 30, 2019, an email communication transmitted in interstate commerce from kbeckman@rkcigroup.com to Victim Company #1's employee, D.M., in Muscatine, Iowa, asking for confirmation of amount sent via ACH.

F. On or about June 7, 2019, through July 2, 2019, a series of email communications transmitted in interstate commerce from kbeckman@rkcigroup.com to Victim Company #1's employees, M.A. and D.M., in Muscatine, Iowa, inquiring into the status of payment on invoice UI18001013.

23. On or about the following dates, in the Southern District of Iowa, and elsewhere, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE,

together with others known and unknown to the Grand Jury, did cause to be transmitted in interstate commerce, by means of a wire communication, that is an electronic funds transfer, from Victim Company 1#'s Wells Fargo bank account, in Muscatine, Iowa, to the "Bryant Brothers Construction BBVA Compass" bank account ending in x3975, which is located in Texas and under the control of VEMUNA KATJAIMO. An example of this activity is as follows:

A. On or about May 30, 2019, a conspirator fraudulently induced Victim Company #1 to make an interstate wire transfer in the amount of $131,719.65 from Victim Company #1's Wells Fargo account, in Muscatine, Iowa, to BBVA Compass bank account ending in x3975.

B. On or about July 3, 2019, a conspirator fraudulently induced Victim Company #1 to make a second interstate wire transfer in the amount of $133,434.81 from Victim Company #1's Wells Fargo account, in Muscatine, Iowa, to BBVA Compass bank account ending in x3975.

This is a violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Commit Money Laundering

24. Count Three incorporates by reference, as if fully set forth herein, paragraphs one through twenty-three of this Indictment.

25. Beginning at least as early as June 1, 2018, and continuing until July 31, 2019, in the Southern District of Iowa and elsewhere, VEMUNA KATJAIMO and

EMMANUEL AZUBUIKE OGBEIDE, did knowingly combine, conspire, and agree together, and with other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, specifically, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud and conspiracy to commit wire fraud as described in this Indictment, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the transactions represented the proceeds of some unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

26. Beginning at least as early as June 1, 2018, and continuing until July 31, 2019, in the Southern District of Iowa and elsewhere, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, did knowingly combine, conspire, and agree together, and with other persons known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, specifically, to wit: to knowing engage, or attempt to engage, in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

## MANNER AND MEANS

27. Defendant, VEMUNA KATJAIMO, would open or cause to be opened, a bank account through the use of false or fraudulent pretenses, representations, and concealment of material facts for the purpose of receiving funds procured from a successful BEC fraud. This bank account would be in the name of a non-existent business or in KATJAIMO'S name. The bank account information would be communicated to a co-conspirator prior to the fraud so that the fraudster would know where to direct the victim to send the money.

28. A co-conspirator would then make false or fraudulent statements, representations, and conceal material facts, in order to persuade the victim company to deposit, wire, or transfer funds into a bank account controlled by another co-conspirator. In the case of Victim Company #1, a bank account controlled by Defendant KATJAIMO.

29. Once the money was deposited, bank account records show that Defendant, KATJAIMO, acted quickly to remove the fraudulent funds through cash withdrawals, wire transfers, cashier's checks, money orders, and deposits into further accounts used by, or under the control of, herself or other co-conspirators before the victim became aware of the fraudulent nature of the transaction. As part of this process, Defendant KATJAIMO conducted financial transactions with Defendant, OGBEIDE, and others known and unknown to the Grand Jury, for them to take control of a portion of the money. The use of a bank account in the name of a business

and the quick removal of funds to multiple sources, is designed to conceal and disguise the nature, location, sources, ownership, and control of the proceeds of the fraud.

30. Defendants KATJAIMO and OGBEIDE, would knowingly participate in, and conduct, financial transactions affecting interstate and foreign commerce that involved the proceeds from the BEC scams that were procured via wire fraud, as described in this Indictment. When they engaged in these financial transactions, Defendants KATJAIMO and OBGEIDE, knew that the property involved in the transactions represented the proceeds of some unlawful activity, and they conducted the financial transactions, knowing that they were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of wire fraud.

31. In furtherance of the conspiracy, and to accomplish its objects, Defendants, together with others known and unknown to the Grand Jury, on or about the dates set forth below, engaged in various activities and financial transactions, including, but not limited to, and by way of example only the following:

    A. On May 31, 2019, Defendant KATJAIMO, obtained cashier's check 504058513 in the amount of $79,500 payable to Defendant, OGBEIDE, and drawn on BBVA Compass bank account ending in x3975. On this same date, Defendant OGBEIDE, deposited this cashier's check into his personal Capital One checking account ending in x8725.

B. On May 31, 2019, Defendant KATJAIMO, obtained cashier's check 504058512 in the amount of $21,000 payable to herself, and drawn on BBVA Compass bank account ending in x3975.

C. On May 31, 2019, Defendant KATJAIMO, withdrew $9,800 in cash from BBVA Compass bank account ending in x3975.

D. On June 1, 2019, Defendant KATJAIMO, obtained cashier's check 504149266 in the amount of $20,000 payable to Defendant, OGBEIDE, and drawn on BBVA Compass bank account ending in x3975.

E. On June 1, 2019, Defendant KATJAIMO, obtained cashier's check 504149265 in the amount of $20,000 payable to herself, and drawn on BBVA Compass bank account ending in x3975.

F. On June 7, 2019, Defendant OGBEIDE, deposited cashier's check 504149266 into his personal Capital One checking account ending in x8725.

G. On July 6, 2019, Defendant KATJAIMO, obtained cashier's check 504825072 in the amount of $6,000 payable to herself, and drawn on BBVA Compass bank account ending in x3975.

H. On July 6, 2019, Defendant KATJAIMO, obtained cashier's check 504825070 in the amount of $39,600 payable to Defendant, OGBEIDE, and drawn on BBVA Compass bank account ending in x3975. On this

same date, Defendant, OGBEIDE, deposited this cashier's check into his personal Capital One checking account ending in x8725.

I. On July 6, 2019, Defendant KATJAIMO, obtained cashier's check 504825069 in the amount of $32,400 payable to AOIC Direct, LLC, and drawn on BBVA Compass bank account ending in x3975.

J. On July 6, 2019, Defendant KATJAIMO, obtained cashier's check 504825071 in the amount of $9,000 payable to J.N., and drawn on BBVA Compass bank account ending in x3975.

K. On July 8, 2019, Defendant KATJAIMO, obtained cashier's check 504810090 in the amount of $10,000 payable to Defendant, OGBEIDE, and drawn on BBVA Compass bank account ending in x3975.

L. On July 10, 2019, Defendant OGBEIDE, deposited cashier's check 504810090 into his personal Capital One checking account ending in x8725.

This is in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3-9
### Unlawful Monetary Transactions

32. Counts Three through Nine incorporates by reference, as if fully set forth herein, paragraphs one through thirty of this Indictment.

33. On or about the following dates, the Defendants, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly engaged in, attempted to

engage in, and caused others to engage in, and attempt to engage in, the following monetary transactions, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, by making the following transfers, such property having been derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349 knowing that the funds involved represented the proceeds of some form of unlawful activity, as follows:

| Count | Defendant | Date | Transaction |
|---|---|---|---|
| 3 | KATJAIMO OGBEIDE | 05/31/2019 | Cashier's check 504058513 payable to OGBEIDE in the amount of $79,500 drawn on BBVA account x3975 and deposited into Capital One checking account ending in x8725. |
| 4 | KATJAIMO | 05/31/2019 | Cashier's check 504058512 in the amount of $21,000 payable to KATJAIMO and drawn on BBVA Compass bank account x3975. |
| 5 | KATJAIMO | 06/01/2019 | Cashier's check 504149266 in the amount of |

| | | | |
|---|---|---|---|
| | | | $20,000 payable to OGBEIDE and drawn on BBVA Compass bank account x3975. |
| 6 | OGBEIDE | 06/07/2019 | Deposit of cashier's check 504149266 in the amount of $20,000 into Capital One checking account ending in x8725. |
| 7 | KATJAIMO | 06/01/2019 | Cashier's check 504149265 in the amount of $20,000 payable to KATJAIMO and drawn on BBVA Compass bank account x3975. |
| 8 | KATJAIMO OGBEIDE | 07/06/2019 | Cashier's check 504825070 in the amount of $39,600 payable to OGBEIDE, drawn on BBVA Compass bank account x3975, and deposited into Capital One checking account ending in x8725. |
| 9 | KATJAIMO | 07/06/2019 | Cashier's check 504825069 in the amount of $32,400 payable to AOIC Direct, LLC, and drawn on BBVA |

|  |  |  | Compass bank account x3975. |
|--|--|--|--|

This is in violation of Title 18, United States Code, Sections 2 and 1957.

## Forfeiture Allegations

34.  As the result of committing the conspiracy to commit wire fraud charged in Count One of this Indictment, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

35.  As a result of committing the money laundering offenses alleged in Counts Two through Nine of this Indictment, VEMUNA KATJAIMO and EMMANUEL AZUBUIKE OGBEIDE, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offenses, and any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offenses.

## Substitute Assets Provision

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred to or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished; or

   e. has been commingled with other property which cannot be subdivided without difficulty; and

   f. it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.

**A TRUE BILL.**

_____
FOREPERSON

Richard D. Westphal
Acting United States Attorney

By: _____
Amanda W. Searle
Assistant United States Attorney