IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:21-cr-65 |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| | ) | |
| EMMANUEL AZUBUIKE OGBEIDE, | ) | |
| | ) | |
| Defendant. | ) | |

The government, by and through the undersigned Assistant United States Attorney, files this sentencing memorandum in anticipation of the sentencing hearing currently set for January 18, 2024, at 10:30 a.m.

## TABLE OF CONTENTS

I. **BACKGROUND** ....................................................................................2

II. **SENTENCING CALCULATION** ........................................................3

III. **ISSUES TO BE RESOLVED** ................................................................4

    A. Error in PSR paragraph 22……………………………………….....4
    B. Defendants objections to factual inaccuracies:
        a. Defendant objects to depositing money on May 29, 2019 at Tom Thumb and Kroger………………………..……….4
        b. Defendant objects to the "assumption" that he was aware of the Kylinks Account as shown in his Google return……………………………………………………............4
        c. Defendant agrees he knew about events relating to White Castle but had no knowledge of the other four victims listed in the paragraph………………………..5
        d. Defendant objects and asserts that he had no knowledge of the events set out in paragraph 66 of the PSR……………………………………………………............7
        e. Defendant agrees he sent money to individuals, but does not believe it was a total of 56 people……………..7
        f. Defendant denies that Kingsley wanted Defendant to learn to commit computer intrusions……….……………..8

1

    **g. Defendant denies the events listed in paragraphs 106 and 109 of the PSR, and that paragraph 126 appears to be a reiteration of paragraphs 106 and 109..................8**

    **h. Defendant asks for clarification of paragraph 116..........................................................................8**

    **i. Defendant objects that he was paid the amounts specified in paragraph 130……………...………………8**

    **j. Defendant asserts confusion as to the total loss amount as described in paragraph 137…....…..………………….9**

    **k. Defendant claims, in reference to paragraph 138 of the PSR, that he should be assessed a minor role…………..10**

  **C. Defendant should not be assessed acceptance of responsibility...................................................................11**

**IV. GOVERNMENT'S RECOMMENDATION……………….………..13**

## I. BACKGROUND

On January 11, 2022, a nine-count Second Superseding Indictment was filed charging Emmanuel Azubuike Ogbeide (Defendant) with Conspiracy to Commit Wire Fraud, beginning on unknown dates but no later than June 2018, and continuing through an unknown date, but no earlier than on or about June 24, 2021 (Count One), in violation of 18 U.S.C. §§ 1343 and 1349; Conspiracy to Commit Money Laundering, beginning at least as early as June 1, 2018, and continuing until June 24, 2021 (Count Two), in violation of 18 U.S.C. § 1956(h); Unlawful Monetary Transactions, on or about May 31, 2019 (Count Three), in violation of 18 U.S.C. § 1957; Unlawful Monetary Transactions, on or about June 7, 2019 (Count Six), in violation of 18 U.S.C. § 1957; and Unlawful Monetary Transactions, on or about July 6, 2019 (Count Eight), in violation of 18 U.S.C. § 1957. A Notice of Forfeiture was also filed pursuant to 18 U.S.C. § 981, 982; 21 U.S.C. § 853; and 28 U.S.C. § 2461(c). (Final Presentence Investigation Report, hereinafter "PSR," ECF 333, ¶ 1-6.) The government filed

objections to the draft PSR. (ECF 312.) Defendant filed objections to the draft PSR. (ECF 320.)

On July 17, 2023, the day of the anticipated, firmly set jury trial before the Court, Defendant pled guilty to Counts One, Two, Three, Six, and Eight of the nine-count Second Superseding Indictment. (PSR, ECF 333, ¶ 7.)

## II.  SENTENCING CALCULATION

In the presentence report paragraphs 146-155 and 209, Defendant's guideline range was calculated as follows:

| | |
|---|---|
| Base Offense Level<br>USSG §2S1.1(a)(1), 2B1.1(a)(1) | 29 |
| Increase Under 18 U.S.C. § 1956 Conviction<br>USSG §2S1.1(b)(2)(B) | +2 |
| Sophisticated Laundering Enhancement<br>USSG §2S1.1(b)(3) | +2 |
| Acceptance of Responsibility<br>USSG §3E1.1(a) | -2 |
| Zero Point Offender<br>USSG §4C1.1 | -2 |
| Total Offense Level | 29 |
| Criminal History Category | I |
| Guideline Sentencing Range: | 87 to 108 Months |

## III. ISSUES TO BE RESOLVED

### A. Error in PSR paragraph 22.

During review of the PSR, the government noted an error on PSR page 9, paragraph 22. The actual loss amount for Children's Healthcare of Atlanta, Inc. should be $727.10. This is later correctly reflected in paragraph 45. This amount is correctly assessed in the restitution calculation in paragraph 141.

### B. Defendant's objections to factual inaccuracies:

#### a. Defendant objects to depositing money on May 29, 2019 at Tom Thumb and Kroger. (ECF 320, Objection 1-PSR ¶ 26.)

Defendant objects that he deposited the money orders on May 29, 2019. See Exhibit 107a[1] pages, 1 and 128-195. This exhibit is the Capital One account opened by Defendant. It contains the bank statement for May 2019 as well as copies of the items deposited that month. It is clear from pages 128-195 that Defendant did make deposits as noted in the PSR. This is a frivolous objection.

#### b. Defendant objects to the "assumption" that he was aware of the Kylinks Account as shown in his Google return. (ECF 320, Objection 2-PSR ¶ 35.)

Defendant objects to the "assumption" that he was aware of the Kylinks account. The Google return for Defendant shows a bank statement for the Kylinks account. The Kylinks account is owned by Amanda Michelle Polk. (PSR ¶34). The Kylinks account is further referenced in paragraph 108 (which is not objected to by

---

[1] The exhibit numbers remain the same as it was proposed for trial.

Defendant). This message is between Katjivena and Kingsley. It references the Kylinks account and Amanda Polk. This is an account that the Land's End money was received in. Land's End is referenced as part of the conspiracy in paragraph 22, which Defendant did not object to.

Further, the agent will testify that four deposits from the Land's End fraud were deposited into this account. This account was accessed by several IP addresses. The evidence shows that IP address 76.197.206.18 was one of the several IP addresses to log into Defendant's Reliable Transports account at JP Morgan Chase Bank. These logins took place on 5/31/19, 6/12/19, and 7/7/19. Therefore, it is clear that this account was part of the scheme to defraud and Defendant was aware of it.

### c. Defendant agrees he knew about events relating to White Castle but had no knowledge of the other four victims listed in this paragraph. (ECF 320, Objection 3 -PSR ¶ 48.)

Defendant agrees that he was involved in the White Castle loss, however, denies involvement in the other four victims. Based on the evidence unobjected to and the fact that Defendant is the direct recipient of the fraud money, it is clear that Defendant and his conspiracy involved all these victims.

(A) Victim Kureha American, LLC. (paragraphs 49-53)

Defendant does not object to paragraphs 49-53 which outlines the fraud

committed against this victim nor JN statements. The money from the victim company went into JN account and then a check was written to Defendant who deposited into his account. This shows Defendants direct involvement in this fraud.

    (B) Victim Design Lighting/Trendy Lighting (paragraphs 53-58)

Defendant does not object to paragraphs 53-58 which outline the fraud committed against this victim nor the witness statement that corroborates the fraud. The money from this company went into Graceland Construction held by Wells Fargo. Within four days of that fraudulent transfer, a check was written from that account to Defendant for $34,500. (PSR ¶54.) Witness GWN stated that Kingsley had her open an account and he took control over it, paying her a percentage. (PSR ¶57.) She knew that Defendant was Kingsley's son. This fraud was part of the conspiracy.

    (C) Victim PEMCO Mutual Insurance Co. (paragraphs 59-61)

Defendant did not object to paragraphs 59-61. The day after the business was compromised, a check was written to Defendant for $39,850 and deposited into his account. Defendant was directly involved in the scheme to defraud this company.

    (D) Victim BBS Manufacturing – (paragraphs 67-69)

Defendant did not object to paragraphs 67-69. The fraudulent money went into an account controlled by CD. CD wrote Defendant a check for over $26,000 which was deposited into his account the same day as the wire transfer from this victim. Witness CD stated that Kingsley told her to write a check to Defendant and

to write for "used vehicles" in the subject line. Defendant was a direct beneficiary of this fraud.

The objection to these victims is a frivolous objection.

### d. Defendant objects and asserts that he had no knowledge of the events set out in paragraph 66 of the PSR. (ECF 320, Objection 4-PSR ¶ 66.)

Defendant states that he does not know about the White Castle wiring money to Impress Me, Inc. However, in Defendant's PSR objections, Defendant admits that he knew about the events with regard to White Castle. Further, in paragraph 130 which outlines Defendant's post-arrest statement, Defendant was asked about this specific wire of $500,000 reference the White Castle fraud. Defendant lied to the agent stating that he was supposed to use that money to buy car haulers. It is confusing as to what the objection to the paragraph 66 actually is. In any event, the evidence is clear that that Defendant was directly involved in the fraud involving White Castle. The agent will testify about Defendant's statement that he made post-arrest. This is a frivolous objection.

### e. Defendant agrees he sent money to individuals, but does not believe it was a total of 56 people. (ECF 320, Objection 5-PSR ¶ 84.)

Defendant questions the accuracy of the World Remit records. In reviewing the records, the paragraph should reflect that Defendant sent over $54,000 to 5-6 people

in Nigeria. The government agrees that the PSR should be changed to reflect this error.

    f. **Defendant denies that Kingsley wanted Defendant to learn to commit computer intrusions. (ECF 320, Objection 6-PSR ¶ 119)**

Defendant denies that Kingsley wanted him to participate in the computer intrusion. Based on the prior statement of Katjaimo, Defendant was going to meet an individual to teach him how to do the computer intrusions, however, this did not occur. This objection does not change the guideline calculation.

    g. **Defendant denies the events listed in paragraphs 106 and 109 of the PSR, and that paragraph 126 appears to be a reiteration of paragraphs 106 and 109. (ECF 320, Objection 7-PSR ¶¶ 106, 109, 126.)**

Defendant denies that him and Katjaimo were involved with "Biyo" and cut Kingsley out of the scheme towards the end. Biyo was another individual that was involved in business email compromises. The agent will testify about the electronic evidence that was obtained in the case as well as the statement by Katjaimo that supports this notion.

    h. **Defendant asks for clarification of paragraph 116. (ECF 320, Objection 8-PSR ¶ 116.)**

Defendant asks for clarification. Katjaimo wrote a check to Defendant during the time she returned to Maryland after her trip to Texas where she met Defendant and began her involvement in the fraud scheme.

> i. **Defendant objects that he was paid the amounts specified in paragraph 130. (ECF 320, Objection 9-PSR ¶ 130.)**

Defendant gave a post arrest statement and admitted to the items in the paragraph. Now, Defendant objects to such information. The $500,000 referenced is for the White Castle fraud. The $149,000 referenced is noted in paragraph 73 (unobjected to by the Defendant) and comes directly from Defendant's Capital One account. That account was analyzed to show that Katjaimo paid Defendant $149,100 from 1/1/18 to 10/21/19. The $26,826 check was written to him by CD which was proceeds from the BBS Manufacturing fraud, noted in paragraphs 67-69 (unobjected to by Defendant). The evidence of the case clearly tracks these amounts and this objection is frivolous.

> j. **Defendant asserts confusion as to the total loss amount as described in paragraph 137. (ECF 320, Objection 10-PSR ¶ 137.)**

Defendant claims confusion as to the total loss amount calculated in this paragraph. Defendant does not state what amount of loss he is accepting responsibility for. Based on the unobjected to paragraphs in the PSR and supplemented information, that amount is correct.

Defendant did not object to paragraph 22 which establishes an attempted loss amount of $1,443,022.06 and an actual loss amount of $1,080,808.56. Defendant did object to paragraph 48 (see objection 3 above) however, based on the information presented the attempted loss amount is $2,503,443.93 and actual loss amount is $505,592.21. Making the total attempted loss $3,946,465.99. (PSR ¶137.) Further, the restitution amount which should be joint and several with the other co-defendant is correctly calculated as $1,587,127.87. (PSR ¶140.) Notable, Defendant did not object to the base offense level in paragraph 146 which is based in part on the loss amount exceeding $3,500,000.

**k. Defendant claims, in reference to paragraph 138 of the PSR, that he should be assessed a minor role. (ECF 320, Objections 11-13, PSR ¶ 138.)**

Defendant claims he should be assessed a minor role. Defendant bears "the burden of establishing [his] entitlement to a minor-role reduction." *United States v. Durham*, 836 F.3d 903, 911 (8th Cir. 2016). In determining whether to apply the reduction, "[t]he district court should consider ... the defendant's knowledge, planning, authority, responsibility, and benefit from the illegal scheme." *United States v. Kearby*, 943 F.3d 969, 977-78 (5th Cir. 2019); *see* § 3B1.2 cmt. n.3(C); *United States v. Waddell*, 831 F.3d 958, 960 (8th Cir. 2016). The guidelines define a minor participant as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n. 3). Downward adjustment is available "for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."

U.S.S.G. § 3B1.2, comment. (backg'd). Under the guidelines, "[t]he mere fact that the defendant was less culpable than his co-defendant[s] does not entitle the defendant to 'minor participant' status as a matter of law." *United States v. Rayner,* 2 F.3d 286, 288 (8th Cir. 1993) (quoting *United States v. West,* 942 F.2d 528, 531 (8th Cir. 1991)).

Defendant should not qualify for minor role based on the totality of the circumstances. Paragraph 136 has three charts that show visually the involvement of Defendant. The last chart that shows that Defendant obtained directly into his bank accounts $832,516. The total amount obtained from the conspiracy was $1,587,127.87. Defendant received over half of the total obtained from the conspiracy. Defendant opened at least six bank accounts all of which obtained fraudulent funds. At least 12 persons opened bank accounts which were used to funnel money though for this conspiracy. This conspiracy was very sophisticated and involved more individuals who were located outside the United States. Defendant lived with Katjaimo during the conspiracy and each were involved in coordinating efforts with Kingsley to shuffle the money between the fraudulent accounts, withdraw money from the accounts, and purchase money orders. Defendant then participated in sending this money back to Nigeria. Defendant was an integral part of the operation of the scheme and received the majority of its proceeds, therefore, Defendant should not be assessed a minor role. The agent will supply additional facts to support this position.

C. **Defendant should not be assessed acceptance of responsibility.**

Based on the frivolous objections by Defendant to relevant conduct, Defendant should not be afforded the reduction for acceptance of responsibility under USSG 3E1.1(a) as assessed in paragraph 154. U.S.S.G. § 3E1.1(a) provides for a two-level reduction if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The sentencing guidelines direct the court to consider multiple factors in its § 3E1.1(a) determination, including:

> (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).... However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility; ... [and]
>
> (h) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

*United States v. Kiel,* 454 F.3d 819, 824 (8th Cir.2006) (quoting U.S.S.G. § 3E1.1 cmt. n. 1).

"[A] defendant who enters a guilty plea is not entitled to credit for acceptance of responsibility as a matter of right." *United States v. Torres-Rivas*, 825 F.3d 483, 486 (8th Cir. 2016). *See also United States v. Mahone*, 688 F.3d 907, 911 (8th Cir. 2012) (affirming denial of § 3E1.1(a) enhancement where the defendant "enter[ed] a plea of guilty and admit[ted] what he needed to admit to get his plea accepted and did not go beyond that" and then later "argued and tried to explain [and] denied things that simply were true"); *United States v. Jones*, 539 F.3d 895, 897 (8th Cir. 2008) (affirming denial of enhancement where the district court found "frivolous denial[s] of relevant conduct"); *United States v. Bell,* 411 F.3d 960, 963 (8th Cir. 2005)

("[A] defendant who falsely denies or frivolously contests his relevant conduct has not accepted responsibility.") (citing U.S.S.G. § 3E1.1 cmt. n. 1(a)).

Under § 3E1.1(a), Defendant "has the burden to establish that he has clearly demonstrated that he is entitled to a two-level reduction in his offense level for acceptance of responsibility." *See United States v. Herron,* 539 F.3d 881, 887-88 (8th Cir. 2008). "In determining whether a defendant qualifies for an acceptance of responsibility reduction, the district court may consider aspects of the defendant's conduct beyond the mere fact of his guilty plea." *United States v. Long Soldier,* 431 F.3d 1120, 1123 (8th Cir. 2005).

Based on the above arguments, it is clear that Defendant only admitted those things necessary to plead guilty, but denied much of the other relevant conduct. Defendant continues to minimize his conduct and has not accepted responsibility. Defendant has made many frivolous objections. The two point reduction should not be applied in this case.

## IV. GOVERNMENT'S RECOMMENDATION

The sentencing statutes inform this Court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The Court, in determining the particular sentence to be

imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The government will ask the District Court to find a final advisory guideline range of Level 31/Criminal History category I – 108 to 135 months, if the Court finds that Defendant should not receive a reduction for acceptance of responsibility. A sentence within this guideline range is warranted.

Defendant in this case participated in this fraudulent scheme primarily with his father and girlfriend for over one year. Defendant opened accounts and moved money around to avoid detection. Defendant was a willing participant and benefitted financially from this crime. Based on the nature and circumstances of this case, a guideline sentence is warranted. Defendant should also be assessed the restitution as noted in paragraph 141.

WHEREFORE, the government prays the District Court consider this sentencing memorandum in determining the final sentence of Defendant.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ Melisa Zaehringer*
Melisa K. Zaehringer
Assistant United States Attorney
U.S. Courthouse
131 E. Fourth Street, Suite 310
Davenport, Iowa 52801

Tel: (563) 449-5432  
Fax: (563) 449-5433  
Email: melisa.zaehringer@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on Friday, January 12, 2024, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record by:   X   ECF/Electronic filing

UNITED STATES ATTORNEY

By: _/s/ Melisa Zaehringer_
     Assistant U.S. Attorney